UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TERRENCE VERNELL WILLIAMS,

        Petitioner,

v.                                 CASE NO. 07-12348
                                 HONORABLE ARTHUR J. TARNOW

RAYMOND BOOKER,

        Respondent.

_____/

## OPINION AND ORDER GRANTING THE WRIT OF HABEAS PETITION

Petitioner Terrence Vernell Williams has filed a *pro se* habeas corpus petition

challenging his convictions for conspiracy to commit murder and three firearm offenses.

Petitioner alleges that his trial attorney was ineffective and that the evidence at trial was

insufficient to support his conspiracy conviction. Having reviewed the record and conducted an

evidentiary hearing, the Court concludes that Petitioner is entitled to relief on his ineffective-

assistance-of-counsel claim for failure to communicate a plea offer. Accordingly, the habeas

petition is granted.

### I. Background

#### A. The Charges, Trial, and Direct Appeal

Petitioner was charged in Saginaw County, Michigan with conspiracy to commit first-

degree murder, assault with intent to commit murder, felon in possession of a firearm, and two

counts of felony firearm. The charges arose from the shooting of Frederick Stewart about 2:30

a.m. on May 14, 2002, in Saginaw, Michigan. Four men

were charged with the shooting:  Petitioner, Jack Tillman, Elijah Tillman, and Saejar Parker.

Petitioner was tried with Jack Tillman and Saejar Parker.[1]  The trial testimony has been

summarized by the Michigan Court of Appeals as follows:

> The victim was sitting in his car in his driveway when he noticed a white car
> drive past him.  A few minutes later, he heard gunshots and saw a tall man
> shooting at him.  He crouched down in the car but was still struck by four bullets.
> A neighbor who heard the gunshots looked out his window seconds after the
> shooting stopped and saw a man dressed in dark clothing enter a white car on its
> passenger side and speed away.  A police officer routinely patrolling the victim's
> block heard the gunshots.  Moments later he spotted a white car driving erratically
> and aggressively, so he pursued it. The chase intensified, culminating in speeds
> well over sixty miles per hour through residential streets, and ended when the
> white car crashed into a tree and telephone pole.  Defendant Jack Tillman opened
> the driver's door and ran, but was later apprehended nearby.  Defendant Williams
> tried to climb out of the open rear passenger side window, but the officer
> immediately pinned him to the ground.  Defendant Parker went for the driver's
> door from the back seat, but never made it out of the car.  After a lengthy scuffle,
> officers also apprehended the passenger who was riding in the front seat, Elijah
> Tillman.

> Several hours later, police found a Luger pistol along the right side of the chase
> route.  The scuffed pistol had a plug of dirt in the barrel and left a divot nearby,
> indicating that someone had thrown it, skipping it off a sidewalk onto the grass.
> Expert testimony matched the pistol to sixteen spent casings found at the scene of
> the shooting.  Of the individuals in the car, footprints found near the casings
> matched only defendant Williams, who rode on the passenger side of the
> backseat.  Police found two handguns in the vehicle, one on the front floorboards
> where Elijah Tillman was sitting, and one on the backseat where Parker and
> Williams were.  Police also found a ski mask and gloves on the backseat.

---

[1]  The trial began as a joint trial with all four defendants in attendance.  The trial court
declared a mistrial as to Elijah Tillman when Elijah's attorney had a medical emergency and was
unable to continue with the trial.  The trial resumed with Petitioner, Jack Tillman, and Saejar
Parker as the defendants.

*People v. Williams*, No. 245443, 2004 WL 1459559, at *1-2 (Mich. Ct. App. June 29, 2004) (footnote omitted).

The prosecutor's theory was that the four defendants were cruising the streets looking for a target when they saw Frederick Stewart. The prosecutor speculated that Petitioner got out of the car and shot Stewart and that Jack Tillman assisted Petitioner by stopping the car, waiting for him, and then driving off after Petitioner fired at Stewart and got back in the car.

On October 29, 2002, a Saginaw County Circuit Court jury found Petitioner guilty of conspiracy to commit murder, Mich. Comp. Laws §§ 750.157a and 750.316(1)(a), felon in possession of a firearm, Mich. Comp. Laws §750.224f, and two counts of possessing a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. The jurors were unable to reach a verdict on the second count charging Petitioner with assault with intent to commit murder. The trial court sentenced Petitioner to concurrent terms of two years in prison for each of the two felony firearm convictions, followed by life imprisonment for the conspiracy conviction and a concurrent term of 3-1/2 to 7-1/2 years (forty-two to ninety months) in prison for being a felon in possession of a firearm.[2]

---

[2] Jack Tillman was convicted of conspiracy to commit murder, assault with intent to commit murder, third-degree fleeing and eluding, resisting and obstructing an officer, and possession of a firearm during the commission of a felony. He was sentenced to life imprisonment for the conspiracy, twenty-nine to fifty years for the assault, three to five years for fleeing and eluding, fifteen months to two years for resisting or obstructing the police, and two years for possessing a firearm during the commission of a felony. The first four sentences were ordered to run concurrently with each other. The felony firearm sentence was consecutive to the conspiracy and assault sentences, but concurrent with the sentence for obstructing an officer and fleeing and eluding.

Petitioner challenged the sufficiency and weight of the evidence in an appeal of right. He also alleged that the trial court erred in denying his motion for a directed verdict at the close of the prosecution's case, that the jury instructions were inadequate and incorrect, that the jury's verdict on the conspiracy count was void due to uncertainty caused by the jury's inability to reach a verdict on the assault count, and that the trial court erred in denying his motion for a mistrial, because prejudice resulted from improper contact with a juror attributed to the defense. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished, *per cuiram* opinion, *see Williams,* 2004 WL 1459559,[3] and on December 29, 2004, the Michigan Supreme Court denied leave to appeal. *See People v. Williams*, 471 Mich. 954; 690 N.W.2d 118 (2004) (table).

---

The trial court granted Saejar Parker's motion for a directed verdict of acquittal as to the conspiracy and assault charges. The jury subsequently convicted Parker of felon in possession of a firearm and felony firearm. He was sentenced as a habitual offender to two years in prison for the felony firearm conviction and to a consecutive term of twenty-eight to ninety months in prison for being a felon in possession of a firearm. United States District Judge Avern Cohn granted a writ of habeas corpus to Parker, *see Parker v. Renico,* No. 05-71106 (E.D. Mich. Aug. 30, 2006), and the United States Court of Appeals for the Sixth Circuit affirmed Judge Cohn's decision. *See Parker v. Renico*, No. 06-2419 (6th Cir. Oct. 17, 2007).

At a separate trial, Elijah Tillman's motion for a directed verdict of acquittal was granted as to the conspiracy count, the assault count, and the felony firearm count that was related to the murder and assault charges. A jury acquitted Elijah of attempting to disarm a police officer, but found him guilty of resisting and obstructing a police officer, felon in possession of a firearm, and felony firearm. He was sentenced to imprisonment as follows: two to four years for resisting and obstructing an officer, three to ten years for being a felon in possession of a firearm, and two years for the felony firearm conviction.

[3] Appellate Judge Joel Hoekstra dissented from the portion of the majority opinion that held that the prosecution presented sufficient evidence to convict co-defendant Saejar Parker of felon in possession of a firearm.

**B. The State Collateral Proceedings**

Petitioner filed a motion for relief from judgment in which he alleged that his trial attorney was ineffective for failing to promptly notify him of a plea offer. The trial court denied relief from judgment, stating that Petitioner had failed to demonstrate "good cause" under Michigan Court Rule 6.508(D) for failing to raise his claim in the appeal of right. The Michigan Court of Appeals and the Michigan Supreme Court also denied relief on the ground that Petitioner failed to establish entitlement to relief under Rule 6.508(D). *See People v. Williams*, No. 268261 (Mich. Ct. App. Aug. 16, 2006); *People v. Williams*, 477 Mich. 997; 725 N.W.2d 670 (2007).[4]

**C. The Federal Proceedings**

Petitioner filed his habeas corpus petition pursuant to 28 U.S.C. § 2254 on May 31, 2007. He alleges that his trial attorney was ineffective and that the evidence at trial was insufficient to sustain his conspiracy conviction. Respondent argues in an answer to the petition that Petitioner's ineffective-assistance-of-counsel claim is procedurally defaulted and that Petitioner's sufficiency-of-the-evidence claim lacks merit.

The Court held an evidentiary hearing on July 7, 2009, July 27, 2009, and April 19, 2010. The parties have filed supplemental briefs, and the case is now ready for a decision.

---

[4] Justice Marilyn J. Kelly voted to remand the case for an evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 436; 212 N.W.2d 922 (1973).

## II. Standard of Review

Section 2254(d) of Title 28, United States Code, imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual

determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable

application occurs" when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly. Rather, that

application must also be unreasonable." *Id*. at 411. Review is *de novo* if new and substantial

evidence supporting a petitioner's claim comes to light on habeas corpus review. *Brown v. Smith*, 551 F.3d 424, 428-30 (6th Cir. 2008).

## III. Discussion

### A. Petitioner's Ineffectiveness Claim

Petitioner claims that his trial attorney unilaterally rejected the prosecutor's offer to have Petitioner plead guilty to the weapons charges in return for a dismissal of the conspiracy and assault charges. Petitioner alleges that he first learned of the prosecutor's offer after the trial commenced and that he would have pleaded guilty to the weapons charges if he had known about the plea offer. According to him, if he had pleaded guilty to the weapons charges, he would have been eligible for parole at the completion of a minimum sentence of eight to ten years and, at worst, he would have been discharged on parole at the completion of his statutory maximum sentence. He states that he is unlikely to be paroled from his current sentence of life imprisonment.

#### 1. Procedural Default

Respondent maintains that Petitioner's ineffectiveness claim is procedurally defaulted because Petitioner did not raise the claim on direct review and the state courts denied leave to appeal pursuant to Michigan Court Rule 6.508(D). A procedurally defaulted claim normally may not be considered by a federal court on habeas corpus review. *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977), and *Picard v. Connor*, 404 U.S. 270, 275-80 (1971)). "[P]rocedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is

applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in

the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state

ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744

(6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

        All three elements of procedural default were satisfied in this case.  First, there is a state

procedural rule applicable to Petitioner's claim.  Michigan Court Rule 6.508(D)(3) generally

prohibits state courts from granting relief from judgment if the defendant alleges

nonjurisdictional grounds that could have been raised on appeal from the conviction or

sentence.[5]  Petitioner violated this rule by failing to raise his ineffectiveness claim on direct

review of his conviction.

        Second, the state courts enforced the rule.  The trial court, the Michigan Court of

Appeals, and the Michigan Supreme Court relied on Rule 6.508(D) to deny relief when

Petitioner raised his claim on collateral review of his convictions.  The state courts' reliance on

Rule 6.508(D) is a sufficient basis for this Court to conclude that the orders were based on a state

procedural bar.  *Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002).

        When deciding whether a state procedural ruling is adequate, courts ask "whether the

state rule in question was firmly established and regularly followed." *Beard v. Kindler*, __ U. S.

__, __, 130 S. Ct. 612, 617 (2009) (quotation marks and citation omitted).  Rule 6.508(D) was

enacted in 1989, and it was "firmly established and regularly followed" before Petitioner

---

[5]  An exception exists when the defendant demonstrates "good cause for failure to raise such grounds on appeal" and "actual prejudice from the alleged irregularities that support the claim for relief."  Mich. Ct. R. 6.508(D)(3)(a) and (b).

appealed his convictions.  Thus, "the procedural bar set forth in Rule 6.508(D) constitutes an

adequate and independent ground on which the Michigan courts may rely in foreclosing review

of federal claims."  *Akrawi v. Booker*, 572 F.3d 252, 261 (6th Cir. 2009) (citing *Howard v.*

*Bouchard*, 405 F.3d 459,  477 (6th Cir. 2005)).

## 2.  "Cause"

Having concluded that all three elements of a procedural default are present in this case,

the next question is whether Petitioner can show "cause for the default and actual prejudice as a

result of the alleged violation of federal law, or demonstrate that failure to consider the claims

will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750

(1991).  Petitioner alleges that his appellate attorney was "cause" for his failure to raise his claim

about trial counsel in the appeal of right.

### a.  *Strickland v. Washington* **and the Duty to Investigate**

Constitutionally ineffective assistance of counsel is "cause" for a procedural default.

*McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 486-88

(1986)).  But to prevail on a claim of ineffective assistance of counsel, a petitioner must

demonstrate that his attorney's "performance was deficient" and that "the deficient performance

prejudiced the defense."  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  This standard

applies to claims about appellate counsel as well as trial counsel.  *Webb v. Mitchell,* 586 F.3d

383, 398 (6th Cir. 2009) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)), *cert. denied*, __ S.

Ct. __, 2010 WL 637798 (U.S. Apr. 19, 2010) (No. 09-7207).

The "deficient performance" prong requires showing that appellate counsel made an objectively unreasonable decision to raise other issues instead of Petitioner's claims; in other words, Petitioner must show that his claim is clearly stronger than the issues counsel did present to the Michigan Court of Appeals. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010) (quoting *Webb*, 586 F.3d at 399) (quoting *Robbins*, 528 U.S. at 288).

"Counsel's duty to investigate has been repeatedly reaffirmed by the Supreme Court." *Poindexter v. Booker*, 301 Fed. Appx. 522, 528 (6th Cir. 2008). The Court of Appeals for the Sixth Circuit also has "granted *habeas* relief when counsel failed to investigate." *Id.* "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-91. "The focus in failure-to-investigate claims, then, is the reasonableness of the investigation (or lack thereof)." *English v. Romanowski*, __ F.3d __, __, No. 08-2611, 2010 WL 1488354, at *10 (6th Cir. Apr. 15, 2010) (citing *Wiggins v. Smith*, 539 U.S. 510, 527 (2003)).

### b. Application

Petitioner's appellate attorney testified at the federal evidentiary hearing that he had worked on only a handful of criminal appeals at the time he represented Petitioner. He admitted that he forfeited oral arguments in Petitioner's case because he filed an untimely appellate brief. He was sure that he read the transcript, but he thought that his law clerk may have written the brief. He also acknowledged that he visited Petitioner just two times: the first time occurred

while Petitioner was confined at the jail and before there was a transcript of the trial. The second time was after he submitted an appellate brief in Petitioner's behalf. He did not recall the content of their conversations, and he could not remember whether he spoke with Petitioner's trial counsel about the case.

Petitioner testified at the evidentiary hearing that his appellate attorney visited him in jail, but that there was no discussion about the case, and the next time the attorney visited him was shortly before the Michigan Court of Appeals decided his case. There was no discussion about a plea offer, and he had no input on the issues raised in the court of appeals. Although he did not inform his appellate attorney about the plea offer, the attorney did not ask him whether a plea offer was made, and he did not realize the legal significance of the issue at the time.

A reasonable appellate attorney would have asked Petitioner whether there was a plea offer, whereas Petitioner's appellate counsel failed to make that inquiry.[6] A reasonable and competent attorney also would have consulted with Petitioner and his trial attorney about issues to be raised on appeal *before* filing the appellate brief. *See* Minimum Standards for Indigent Criminal Appellate Defense Services, Standard 2 ("Before filing the initial postconviction or appellate motion or brief and after reviewing the relevant transcripts and lower court records, counsel must consult with the defendant about the proposed issues to be raised on appeal and advise of any foreseeable benefits or risks in pursuing the appeal generally or any particular

---

[6] The trial court also failed to make an on-the-record inquiry as to whether there was a plea offer or any plea negotiations. If the court had made an inquiry on the record, there would not be a problem now.

11

issue specifically.").[7]  Petitioner's appellate attorney could not recall consulting trial counsel, and he visited Petitioner only one time before filing the appellate brief.  According to Petitioner's testimony, there was no discussion about the issues.  The Court concludes that appellate counsel did not make a reasonable investigation before filing the state appellate brief.  His performance was deficient.

To demonstrate prejudice in the appellate context, Petitioner must show a reasonable probability that, but for his attorney's unreasonable failure to raise his claim on appeal, he would have prevailed.  *Thompson*, 598 F.3d at 285 (quoting *Robbins*, 528 U.S. at 285).  The Court finds support in the record for Petitioner's claim that trial counsel failed to convey a plea offer to him in a timely manner.  Thus, Petitioner in all likelihood would have prevailed if appellate counsel had investigated and raised Petitioner's claim about trial counsel in the appeal of right.  It follows that appellate counsel's deficient performance was prejudicial.

Because appellate counsel was ineffective, Petitioner has established "cause" for his procedural default.  He was prejudiced by the alleged violation of his Sixth Amendment right to effective assistance of counsel, because he would have accepted the plea offer had it been made to him and he would have received a significantly less severe sentence.

Petitioner has satisfied the gateway test for review of his procedurally defaulted claim.  The Court will proceed to address his claim about trial counsel.

---

[7]  These standards can be found at www.sado.org/commission.  See also, *Williams v Birkett*, __ F. Supp.2d __, __, No. 2:07-cv-15376, 2010 WL 1071385, at *8 (E.D. Mich. Feb. 26, 2010)(quoting an ABA standard for defense counsel).

### 3. Trial Counsel

As noted, Petitioner claims that his trial attorney failed to communicate a favorable plea offer to him. A trial attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. "[A] defense attorney's failure to communicate a plea offer to his or her client constitutes deficient performance." *Guerrero v. United States*, 383 F.3d 409, 416 (6th Cir. 2004) (citing *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003)); *Satterlee v. Wolfenbarger*, 374 F. Supp.2d 562, 567-68 (E.D. Mich. 2005) aff. 453 F. 3d. 362 (6th Cir. 2006). Therefore, if Petitioner can show that the prosecutor extended a plea offer which his attorney failed to communicate to him, he will have established the first prong of the *Strickland* test. *Guerrero*, 383 F.3d at 416. "[A] petitioner may establish the requisite prejudice by demonstrating a 'reasonable probability' that if he had been notified of the plea offer, he would have accepted it." *Id.* (citing *Griffin*, 330 F.3d at 737, *Magana v. Hofbauer*, 263 F.3d 542, 547-48 (6th Cir. 2001), and *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th Cir. 1988)).

### a. The Evidentiary Hearing

Petitioner's trial attorney testified at the evidentiary hearing that sixty to seventy percent of his cases were criminal cases and that he normally advised clients whether to plead guilty. He recalled a discussion about a plea offer on the first day of trial. He did not recall the details of the plea offer, but he thought that it was a good one and that it might have entailed pleading guilty to one count of felony firearm and one count of assault with intent to do great bodily harm less than murder or something similar. He also thought that the trial judge said the sentence

would be approximately five years or less.  At Petitioner's suggestion, he discussed the offer with Petitioner's stepfather, who thought the offer was acceptable.

Trial counsel seemed to think that the offer required all the defendants to accept the offer, and he vaguely remembered discussing the offer with Petitioner, his co-defendants, and the other defense attorneys in the jury room.  He thought that all the defendants rejected the offer.  He remembered that Petitioner was not receptive to the idea and was adamant about going to trial. After Petitioner rejected the plea offer, the prosecution may have indicated that the offer was still on the table, and he (trial counsel) may have responded by saying that Petitioner had already rejected the offer.  But he did not specifically recall that happening, and the offer never changed. He would not have flatly rejected a new plea offer without first consulting his client.

An assistant Saginaw County prosecutor testified at the hearing that he examined the prosecutor's file in Petitioner's case and did not find any notations about a plea offer.  He did recall that one of the defense attorneys asked him on the first day of trial whether there was an offer on the table or whether the offer was still on the table.  However, he had no recollection of responding to the inquiry or making an offer.  Nor did he recall all four defense attorneys and their clients having a meeting in the jury room.  He stated that a joint meeting like that may have happened, but he found it "very unusual."  He was as positive as he could be that, once the trial commenced, there were no discussions about a plea bargain.  He found it inconceivable that he would make an offer to dismiss the more serious charges in return for a plea of guilty to felony firearm and felon in possession of a weapon.

Petitioner testified at the hearing that his trial attorney visited him before the preliminary examination and before trial, but that they never discussed a plea offer.  He claimed that, after the victim testified at trial, his attorney informed him that the prosecutor had offered to let him plead guilty to felony firearm and felon in possession of a firearm and that his attorney had said they were not interested.  Petitioner was 24 or 25 years old at the time, and his two prior criminal cases were resolved with guilty pleas.  However, he did not recall being in a jury room with his co-defendants and being offered a plea, and he did not ask his attorney about a plea offer, because he assumed the attorney would relay an offer to him if there was one.  He would have pleaded guilty to the gun charges if he had known his sentence would be about ten years.  He did not inform his attorney that he was not interested in a plea offer.

Petitioner's step-father testified at the hearing that Petitioner's trial attorney never talked to him about a plea and that he did not recall a meeting with Petitioner's co-defendants.  Petitioner's attorney merely stated that he could win the case with no problem.

## b.  Analysis

The evidence at the hearing established that there was a plea offer.  Petitioner and his trial attorney testified that there was an offer, and even though the prosecutor did not recall making an offer, it is possible that the offer was made prior to the trial prosecutor being assigned to the case.  It is also possible that the offer was still on the table when the trial commenced, because the assistant prosecutor recalled that one of the defendants asked him whether there was an offer or whether the offer was on still on the table.

The testimony also establishes that Petitioner's trial attorney failed to convey the offer to Petitioner in a timely manner. Petitioner testified that his trial attorney conveyed the offer to him after the trial began and that the attorney unilaterally rejected the offer. Trial counsel in all likelihood was protecting himself when he testified that Petitioner rejected the offer. Trial counsel had poor recollection at the evidentiary hearing, and he was unsure about many things. The Court, moreover, is entitled to make a credibility determination, *Satterlee*, 374 F. Supp.2d at 568 (citing *Stidham v. Wingo*, 482 F.2d 817, 820 (6th Cir. 1973)), and the Court found Petitioner to be more credible than his trial attorney. The Sixth Circuit in affirming the grant of the writ of habeas corpus held, "If there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." Citations omitted. 453 F. 3d. At 366-7.

In conclusion, a plea offer was made, trial counsel failed to convey the offer to Petitioner in a timely manner, and Petitioner would have accepted the plea offer had it been presented to him. The Court therefore finds that trial counsel's performance was deficient and that the deficient performance prejudiced Petitioner. Trial counsel was constitutionally ineffective. Accordingly, the Court **GRANTS** a conditional writ of habeas corpus on the basis of Petitioner's first claim.

The remedy for a Sixth Amendment violation should neutralize the constitutional deprivation and be tailored to the injury. *Magana*, 263 F.3d at 553. In keeping with *Magana*, the State is ordered to release Petitioner unless, within the next sixty days, it offers Petitioner an opportunity to plead guilty to felony firearm and felon in possession of a firearm in exchange for the dismissal of the conspiracy and assault charges.

## B. Sufficiency of the Evidence

The second and final habeas claim alleges that the evidence at trial was insufficient to sustain Petitioner's conspiracy conviction. Petitioner claims that he was merely one of four people present in the vehicle used in the shooting and that his mere presence in the vehicle was insufficient to sustain his conspiracy conviction.

### 1. Supreme Court Precedent

The critical question on review of the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In Michigan, "[a]ny person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy . . . ." Mich. Comp. Laws § 750.157a. The gist of the offense lies in the unlawful agreement between two or more persons to do the unlawful act." *People v. Hamp*, 110 Mich. App. 92, 102; 312 N.W.2d 175, 180 (1981). "To prove a conspiracy to commit murder, it must be established that each of the conspirators ha[d] the intent required for murder and, to establish that intent, there must be foreknowledge of that intent." *Id*., 110 Mich. App. at 103; 312 N.W.2d at 180. Proof of a conspiracy "may be derived from the circumstances, acts, and conduct of the parties. Inferences may be made because such evidence sheds light on the coconspirators' intentions." *People v. Justice*, 454 Mich. 334, 347; 562 N.W.2d 652, 659 (1997) (internal citation and footnote omitted).

## 2. The State Appellate Court's Decision

The Michigan Court of Appeals summarized the relevant facts and analyzed Petitioner's

sufficiency-of-the-evidence claim as follows:

> The victim saw a white car pass by him and then a tall shooter firing at him. The sixteen spent shell casings, direction of the shots, and expert testimony regarding the shooter's stance, confirm that the shooter intended to hit and kill the victim. Within seconds after the shooting, the victim's neighbor saw a darkly clad man get into the passenger side of a white car and speed off. Testimony from the victim and police agreed that police happened upon the scene moments after the shooting and saw a white car erratically speeding from the area. Police chased the car and later found, along the right side of the chase's route, the Luger that fired the shots. Williams' footwear matched footprints at the site where the spent casings were found, and his open window left him in a position to dispose of the Luger. He also tried to escape from the open window. This evidence strongly suggested that Williams shot the victim with the Luger and then threw it out the window during the chase.
>
> Two stolen guns, a ski mask, and gloves were found in the car. These criminal tools, the waiting car, and the hasty retreat all suggest a common criminal purpose agreed upon between Williams and the driver, Tillman, before the shooting. The attempted flight of all the passengers suggests their role in the criminal conspiracy as well. *People v. Compeau*, 244 Mich. App. 595, 598; 625 N.W.2d 120 (2001).

*Williams*, 2004 WL 1459559, at *4. The Court of Appeals concluded that "the overwhelming

circumstantial evidence suggesting a conspiratorial effort far outweighed the minor discrepancies

and oddities on which Williams bases his challenge." *Id.*

## 3. Analysis

The state court's determination of the facts is supported by the record. There was

additional evidence that Petitioner initially resisted arrest and that a loaded handgun was found

in the backseat of the car where the police thought he was seated.

Petitioner contends that the prosecutor's theory – that he was the shooter and conspired with his three co-defendants to commit the shooting – was tenuous, because the victim testified that Petitioner was *not* the shooter. Petitioner also contends that the expert witness's testimony on footprint evidence was not as conclusive as the state court made it appear to be when it stated that Petitioner's boots matched shoe impressions at the scene.

The expert witness testified that the footprint at the scene of the shooting was consistent with the boots that Petitioner was wearing on the night of the shooting. The expert witness also testified that the width and style or brand of the boots were somewhat unusual. It was not unreasonable for the jury to infer that Petitioner made the footprints at the crime scene.

Next, Petitioner alleges that the Court of Appeals improperly determined that he was seated on the passenger side of the fleeing car and could have thrown a gun out the window during the chase. While it is true that the pursuing officers did not see anything thrown from the car, a civilian turned in a gun that was found along the chase route, and an expert witness testified that the gun was used in the shooting. Witnesses to the crime saw the shooter get into the passenger side of the car, and a police officer observed Petitioner climb out of the rear passenger side of the car after the car crashed. A reasonable inference from the evidence is that Petitioner tossed the gun out of the car.

Petitioner asserts that the jury's inability to reach a decision on the assault charge casts doubt on the conspiracy conviction because the jury obviously concluded that he was not the shooter. The Michigan Court of Appeals "f[ound] no inconsistency in a verdict finding a defendant guilty of conspiracy while not finding him guilty of the actual assault." According to

the Court of Appeals, "the evidence demonstrated at [a] bare minimum that Williams rode in the car to the site of the crime and remained there during the shooting; sat near a ski mask, a pair of gloves, and a pistol; probably threw the Luger out his window; and attempted to escape after the crash." *Williams*, 2004 WL 1459559, at *4. The Court of Appeals concluded that "this evidence alone sufficed to support the inference that [Williams] conspired to commit murder. . . ."

This Court agrees. A rational trier of fact could have concluded from all the evidence, taken in the light most favorable to the prosecution, that Petitioner was the shooter and that he conspired with his co-defendants to murder Mr. Stewart. Therefore, the state appellate court's conclusion – that the evidence was sufficient – was not contrary to, or an unreasonable application of, *Jackson*. It was "not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992).

## IV. Conclusion

The state court's decision on Petitioner's sufficiency-of-the-evidence claim did not result in an unreasonable determination of the facts or in a decision that was contrary to, or an unreasonable application of, *Jackson*. The Court therefore denies relief on Petitioner's sufficiency-of-the-evidence claim. The Court declines to issue a certificate of appealability on the claim, because reasonable jurists would not disagree with the Court's resolution of that claim, nor conclude that the issue is adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The state court's decision on Petitioner's ineffective-assistance-of-counsel claim was contrary to, or an unreasonable application of, *Strickland*. Accordingly, a conditional writ of habeas corpus shall issue on Petitioner's first claim. The State shall release Petitioner unless, within sixty days, it offers Petitioner an opportunity to plead guilty to felon in possession of a firearm and felony firearm in exchange for a dismissal of the counts charging him with conspiracy to commit first-degree murder and assault with intent to commit murder.


S/Arthur J. Tarnow\
Arthur J. Tarnow\
United States District Judge

Dated: May 28, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 28, 2010, by electronic and/or ordinary mail.

S/Catherine A. Pickles\
Judicial Secretary